NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250553-U

NO. 4-25-0553

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 5, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* R.A., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | No. 24JA17 |
| v. | ) | |
| Candace D., | ) | Honorable |
| Respondent-Appellant). | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices DeArmond and Grischow concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court's best-interest determination was not against the manifest weight of the evidence.

¶ 2 In February 2025, the State filed a petition to terminate the parental rights of respondent Candace D. as to her minor child R.A. (born in 2024). In May 2025, the trial court granted the State's petition and terminated respondent's parental rights. Respondent appeals, arguing the court's best-interest determination was against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3         I. BACKGROUND

¶ 4 In February 2024, the State filed a petition to adjudicate R.A. to be neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)), alleging that she was subjected to an environment injurious to her welfare. The

petition alleged that, among other things, respondent had previously been found unfit, had eight other children removed from her care, and remained unfit in various other cases. Additionally, the petition detailed ongoing issues with substance abuse and domestic violence.

¶ 5    Respondent stipulated that the State could prove the allegations in the petition. The trial court adjudicated R.A. to be neglected, found respondent unfit, made R.A. a ward of the court, and placed guardianship and custody with the Illinois Department of Children and Family Services.

¶ 6    In February 2025, the State filed a petition for termination of parental rights, alleging in three counts that respondent was unfit under sections 1(D)(b) and (m)(ii) of the Adoption Act (750 ILCS 50/1(D)(b), (m)(ii) (West 2024)) for (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to R.A.'s welfare and (2) failure to make reasonable progress toward the return of R.A. to her care during two separate nine-month periods after the adjudication of neglect. Respondent admitted to two of the counts and stipulated to the remaining count. During the prove-up, the State proffered that if called, the caseworker would testify that respondent failed to engage in or complete her counseling, substance abuse assessment, domestic violence counseling, and psychiatric evaluation and she was inconsistent with her drug screens. Additionally, police officers, if called, would testify to two domestic incidents involving respondent and R.A.'s biological father during the pendency of these proceedings.

¶ 7    The trial court held a best-interest hearing in May 2025. The caseworker testified that he had the opportunity to visit the home of the foster parents on numerous occasions and that the housing was clean and appropriate. The foster parents had two biological children and were also fostering R.A.'s biological brother. The family showed love and affection to R.A., who had a loving and close bond with both foster parents and was comfortable in the home.

¶ 8        The foster mother testified that other occupants of the home were her husband, two biological children, and R.A.'s biological brother, who she was in the process of adopting. The children were all bonded to one another and loved each other very much. R.A. also had a bond with the extended family of the foster parents. The foster parents provided for all of her needs and wanted to provide permanence via adoption if given the opportunity.

¶ 9        Respondent testified that R.A. knew her as her mother and they enjoyed a mother-daughter bond. She had been providing clothing, diapers, wipes, and formula to send home with R.A. following visitation. Respondent loved R.A. and wanted to attain fitness to care for her. She had completed inpatient treatment and had been attending intensive outpatient treatment three nights a week to help her become a better parent. She was currently residing at a nonprofit charity while the providers there were helping her to obtain housing and employment.

¶ 10        The best-interest report supplied to the trial court stated that R.A. was thriving in her placement and that the foster family was providing for all her needs. The report stated that respondent had failed to correct the conditions that caused R.A. to come into care and that she had failed to demonstrate the minimum parenting standards required to care for R.A. The report detailed respondent's extensive history of substance abuse, domestic violence, and criminal history. The report concluded that in considering the statutory best-interest factors, it was in R.A.'s best interest to terminate respondent's parental rights.

¶ 11        The trial court found that the State proved by a preponderance of the evidence that it was in R.A.'s best interest to terminate respondent's parental rights. The court addressed the required statutory best-interest factors, finding that almost every factor supported the termination of parental rights. The court noted that while respondent undoubtedly loved her, R.A. needed permanence, including "housing stability, sobriety, free from toxic relationships." R.A. was well

cared for, and her placement provided security and stability. The court terminated respondent's parental rights and set the permanency goal to adoption.

¶ 12        This appeal followed.

¶ 13        II. ANALYSIS

¶ 14        On appeal, respondent argues the trial court erred in finding that it was in R.A.'s best interest to terminate respondent's parental rights. Specifically, she argues that certain factors weighed in her favor and that an order for guardianship should have been entered rather than the termination of her parental rights.

¶ 15        When a trial court finds a parent unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *Id.* at 364. The State must prove by a preponderance of the evidence termination of parental rights is in the minor's best interest. *Id.* at 366. In making the best-interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of
> the child's identity; (3) the child's background and ties, including
> familial, cultural, and religious; (4) the child's sense of attachments,
> including love, security, familiarity, and continuity of affection, and
> the least-disruptive placement alternative; (5) the child's wishes;
> (6) the child's community ties; (7) the child's need for permanence,
> including the need for stability and continuity of relationships with

parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. On review, "[w]e will not disturb a court's finding that termination is in the [child's] best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 16        Here, the best-interest factors favor termination of respondent's parental rights. Despite respondent's arguments to the contrary, the testimony and best-interest report make clear that she is unable to provide for R.A.'s physical safety and welfare. Further, the development of the child's identity; the child's background and ties; the child's need for permanence; and the preference of the foster family to adopt R.A. all weigh in favor of termination. Moreover, while it is clear that respondent and R.A. have a bond, the testimony and evidence also make it clear that R.A. is bonded with her foster family.

¶ 17        While the trial court commended respondent for seeking treatment and hoped that she would continue to do so, the record shows she had repeatedly failed to comply with her service plan and would be unable to care for R.A. The court explicitly referenced the statutory best-interest factors and found that they weighed in favor of terminating respondent's parental rights. Respondent's arguments in favor of guardianship instead of termination amount to contentions that the court's ruling goes against *her* wishes for R.A. However, at the best-interest hearing, "the

parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. All considerations at the best-interest hearing necessarily yield to the best interest of R.A. and her interest in a stable, loving, and safe home environment. *Id.*

¶ 18        Accordingly, we cannot conclude the evidence in the record "clearly calls for the opposite finding" or is such that "no reasonable person" could find as the trial court found. (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. The court's best-interest determination was not against the manifest weight of the evidence.

¶ 19                                III. CONCLUSION

¶ 20        For the reasons stated, we affirm the trial court's judgment.

¶ 21        Affirmed.